[NOT FOR PUBLICATION] 

 

No. 96-2100

 KEVIN AND BOBBI RAYZOR, THE MINOR BR,
 REPRESENTED BY HER PARENTS, KEVIN AND BOBBI RAYZOR,

 Plaintiffs, Appellants,

 v.

 UNITED STATES OF AMERICA,

 Defendant, Appellee.
 

 APPEAL FROM THE UNITED STATES DISTRICT COURT

 FOR THE DISTRICT OF PUERTO RICO

 [Hon. Salvador E. Casellas, U.S. District Judge]
 

 Before

 Selya, Circuit Judge,
 Coffin and Cyr, Senior Circuit Judges.

 

 Andres Guilemard-Noble with whom Joan S. Peters was on brief
for appellants.
 Steve Frank, Attorney, Appellate Staff Civil Division,
Department of Justice, with whom Frank  W.  Hunger, Assistant
Attorney General,  Guillermo Gil , United States Attorney, and  Robert
S. Greenspan , Attorney, Appellate Staff Civil Division, Department
of Justice, were on brief for appellee.
 
 JULY 22, 1997
 

 COFFIN, Senior  Circuit  Judge. Appellants Kevin and Bobbi

Rayzor seek to hold the United States responsible for the sexual

abuse of their daughter by a babysitter whose name they obtained

from a list allegedly recommended by the Navy. The Rayzors filed

suit for damages under the Federal Tort Claims Act, 28 U.S.C. S

1346(b), asserting that the Navy was negligent in directing them to

select a babysitter from a Red Cross generated list without first

checking the qualifications of the individuals on the list. The

district court granted summary judgment for the government on both

that claim and a related First Amendment claim. We affirm.

 I. Background

 Appellant Kevin Rayzor, a petty officer in the Navy, was

stationed with his wife and young daughter at a base in Ceiba,

Puerto Rico. The Rayzors claim that the Navy instructed them to

hire babysitters for sporadic child care needs only from a list

provided by the American Red Cross at the base's Family Service

Center. That list contained the names of teenagers who had

completed the nine-hour Red Cross babysitting course offered at the

 Two points warrant some elaboration. First, there is some
confusion about whether the district court misunderstood the
allegation to be that the Navy advised the Rayzors  not to hire from
the Red Cross list. Unraveling the confusion is unnecessary
because our assumption that the Navy did direct the Rayzors to use
the list exclusively is most advantageous to the Rayzors, whose
claim of negligence would be absurd, rather than just fruitless, if
they had hired a sitter from the list despite the Navy's explicit
directive not to do so.

 Second, the Rayzors' assertion that they were directed to hire
from the Red Cross list is based only on their own statement and is
not attributed to any particular individual or document. For
purposes of summary judgment, we accept the allegation as true.

base. The course covered the basics of first aid and outlined the

duties of a babysitter.

 The Rayzors hired an individual from the list, and discovered

the next day that she had physically and sexually abused their two-

year-old daughter. They subsequently filed their complaint under

the FTCA alleging that the Navy was negligent in "certif[ying]" the

sitter, and in falsely representing that she was qualified to

provide safe babysitting services. Appellants also alleged that

the Navy violated their First Amendment rights by warning them "to

keep silent" about the incident.

 The district court granted summary judgment for the

government. It ruled that the FTCA was inapplicable because the

Red Cross and its employees were not government employees whose

conduct was actionable under the statute. It also held that an

FTCA action was not viable because the Navy's alleged actions did

not constitute negligence under local law. Although the government

did not respond in its summary judgment motion to the First

Amendment claim, the district court  sua  sponte dismissed the claim

 The Navy sought to have the sitter prosecuted but the U.S.
Attorney's office declined to prosecute because the sitter was a
juvenile.

 The Navy operates two fulltime child care programs at the
base, the Child Development Center/Preschool (CDC) and a Family
Home Care Program (FHC), neither of which is at issue in this case.
The Navy has issued detailed instructions for each of these
programs, including background checks for FHC providers, who are
private individuals who care for up to six children in a Navy
housing unit. See App. at 24-41.

for lack of supporting evidence. The Rayzors then filed this

appeal.

 II. Federal Tort Claims Act

 Our review of a grant of summary judgment is de novo, and we

evaluate the record in the light most favorable to the non-moving

party. See Coyne v. Taber Partners I, 53 F.3d 454, 457 (1st Cir.

1995). Even from that vantage point, however, the Rayzors'

negligence claim lacks luster.

 Their claim, in essence, is that the Navy should have probed

the backgrounds of the babysitters on the Red Cross list before

recommending them to base residents. Under Puerto Rico law, which

is applicable in this FTCA suit,  see  Attallah v.  United States , 955

F.2d 776, 781 (1st Cir. 1992), such a claim is actionable only if

a reasonable factfinder could find that the Navy had a duty to

exercise due diligence to avoid foreseeable risks to the Rayzors,

and that the Navy failed to fulfill that responsibility. See

Coyne, 53 F.3d at 458-60;  Malave Felix v. Volvo Car Corp. , 946 F.2d

967, 971 (1st Cir. 1991). Even assuming, as the Rayzors argue at

length, that the Navy acquired a duty to protect them as a result

of its recommendation that they hire a babysitter from the Red

Cross list -- a legal proposition about which we have doubts -- we

think no reasonable factfinder could find either a failure to

exercise due diligence or a foreseeable risk of harm.

 The Rayzors do not appeal the court's holding that Red Cross
workers are not federal employees, limiting their challenge on the
FTCA claim to the court's ruling that they failed to make a viable
showing of negligence.

 The Navy's only representation about the sitters on the Red

Cross list was an implicit statement that they were preferable to

other sitters because of their relationship with the international

humanitarian agency, making them something of a known quantity.

The Rayzors offer no evidence to support their contention that the

Navy lacked due diligence in failing to investigate the individuals

whose names appeared on the list. They cite to no incidents of

child abuse involving Red Cross sitters generally, or concerning

the specific individuals on the list at the base in Ceiba.

Moreover, all of the individuals on the Red Cross list were

teenagers, ranging in age from 11 to 17, and we cannot accept that

a reasonable factfinder would have concluded that the Navy had an

obligation to do background checks on minors who had undergone Red

Cross training, in the absence of particularized concern. In

short, a reasonable person would not have foreseen a need to

investigate these Red Cross-affiliated sitters to prevent harmful

criminal conduct.

 Although foreseeability typically is both a "factbound and

case-specific" issue, see Coyne, 53 F.3d at 460 -- foreclosing

summary judgment -- "the evidence must be such that the factfinder

rationally can conclude that the risk complained of is among the

universe of risks recognizable by reasonably prudent persons acting

with due diligence under the same or similar circumstances." Id.

(citing Pacheco v. Puerto  Rico  Water  Resources  Auth., 112 D.P.R.

367, 372 (1982)). As we have noted, however, the Rayzors have

proffered no basis upon which a factfinder could conclude that it

was foreseeable to the Navy that this, or any other teenage

babysitter who had taken a Red Cross babysitting course, would

engage in criminally abusive mistreatment of her charge.  Cf.,  e.g.,

Coyne, 53 F.3d at 461 (reversing summary judgment where defendants

were on notice of the potential for violence); Elba v. Univ.  of

P.R., 90 J.T.S. 13 (1990) (Official English Translation: No. RE-86-

214, slip op. at 21-23) (university's failure to provide adequate

security in high-risk area gave rise to violent assault of female

student);  Negron v.  Orozco Rivera , 113 P.R. Offic. Trans. 921, 927-

29 (1983) (reasonable person would have foreseen eruption of

violence in police station, given prior confrontation between armed

officer and decedent). See also Mas v. United  States, 984 F.2d

527, 530 (1st Cir. 1993) (showing of negligence under Puerto Rico

law requires "a demonstration that the defendant has either actual

or constructive knowledge of a dangerous condition"). We therefore

conclude that the Rayzors failed to generate a sufficient factual

dispute to survive the government's motion for summary judgment on

the FTCA claim. Accordingly, we affirm the district court's

dismissal of that claim.

 III. First Amendment Claim

 We previously have observed that liability for a breach of
duty under Puerto Rico law requires a causal relationship between
the breach and the ensuing harm, meaning that "'the damage must
have been foreseeable and  avoidable had the omitted action been
timely taken,'" Coyne v. Taber  Partners  I, 53 F.3d 454, 459 (1st
Cir. 1995) (quoting Elba v. Univ.  of  P.R., 90 J.T.S. 13 (1990)
(Official English Translation: No. RE-86-214, slip op. at 12)
(emphasis added)). The Rayzors offer no evidence that a background
check would have revealed the unsuitability of the sitter.

 The Rayzors also alleged that the government violated their

First Amendment rights by threatening that they should keep quiet

about the abuse incident. The government's motion for summary

judgment did not address this claim, but the court dismissed it  sua

sponte because it could not find any proof in the record to verify

the allegation. The court stated in its opinion:

 Mr. Rayzor has failed to identify or indicate who, if
 anyone, threatened him. In our opinion, a claim not
 supported by affirmative evidence does not present a
 genuine issue for trial. Unsupported allegations or
 denials are not enough to defeat a motion for summary
 judgment. Anderson v. Liberty  Lo[bby],  Inc. 477 U.S.
 242, 252 (1986).

 The only apparent evidence on this claim contained in the

appellate materials consists of two affidavits, one from each of

the Rayzors. The content relevant to a First Amendment claim in

Kevin Rayzor's affidavit is as follows:

 [W]e were harassed and threatened by Navy officers in an
 attempt to cover-up the incident. . . . I was told by an
 officer of the Navy that I better keep my wife's mouth
 shut, or I would have problems with my records.

Bobbi Rayzor's affidavit merely repeats the allegation of

harassment and threats, and alleges that action on her application

to be licensed as a Child Care Provider was delayed because of the

couple's complaints about the incident.

 We agree with the district court's judgment that these

statements are inadequate to warrant a trial on the First Amendment

claim. They fail to identify who made the threatening statement(s)

or when they were made, the basis for Mrs. Rayzor's assertion that

this incident affected her application to become a base Child Care

Provider, or how Officer Rayzor's records could be affected by

public disclosure of the assault.

 Appellants imply in their brief that summary judgment on this

claim is premature because no discovery has been conducted. So far

as we can tell, lack of discovery was not an issue below. The

government moved for summary judgment on March 18, 1994, and the

district court dismissed the case more than two years later on July

28, 1996. Appellants do not assert that they requested, but were

denied, discovery. Instead, they maintain that their affidavits

constituted "ample evidence" to survive summary judgment.

 As we already have explained, we disagree that their proffer

is adequate. It is virtually axiomatic that "neither 'conclusory

allegations,' . . . nor '[b]rash conjecture coupled with earnest

hope that something concrete will materialize, is []sufficient to

block summary judgment.'" J. Geils Band Employee Benefit Plan v.

Smith  Barney  Shearson,  Inc., 76 F.3d 1245, 1251 (1st Cir. 1996)

(citations omitted). This is all the Rayzors have offered.

 We have some concern about the court's sua  sponte grant of
summary judgment on the First Amendment claim in light of the
government's failure to move for brevis disposition on that claim.
This, however, was not an ambush. In its Reply to Plaintiffs'
Opposition to Defendant's Motion for Summary Judgment, the
government pointed to the lack of support for both the allegations
of threats and Mrs. Rayzor's contention that the government stalled
her license to become a Child Care Provider. The Reply was filed
on June 27, 1994, more than two years before the court ruled.
 We therefore are satisfied that appellants had adequate notice
of the government's challenge to the sufficiency of their "threat"
allegations. See  Penobscot Indian Nation v.  Key Bank of Maine , 112
F.3d 538, 562 (1st Cir. 1997) (quoting Berkovitz v. Home  Box
Office, Inc., 89 F.3d 24, 29 (1st Cir. 1996)) ("'targeted party'"
must be given "'appropriate notice and a chance to present its
evidence on the essential elements of the claim or defense'"). 
In these circumstances, to preclude summary judgment on the First
Amendment claim based on the government's failure to seek it
explicitly would be to waste judicial resources for the sake of
pointless technicality. We decline to do so.

 For the foregoing reasons, the summary judgment of the

district court is affirmed.