USCA1 Opinion

 

 [NOT FOR PUBLICATION]  ____________________ No. 96-2100 KEVIN AND BOBBI RAYZOR, THE MINOR BR, REPRESENTED BY HER PARENTS, KEVIN AND BOBBI RAYZOR, Plaintiffs, Appellants, v. UNITED STATES OF AMERICA, Defendant, Appellee. ____________________ APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF PUERTO RICO [Hon. Salvador E. Casellas, U.S. District Judge] ____________________ Before Selya, Circuit Judge, Coffin and Cyr, Senior Circuit Judges. ____________________ Andres Guilemard-Noble with whom Joan S. Peters was on brief for appellants. Steve Frank, Attorney, Appellate Staff Civil Division, Department of Justice, with whom Frank  W.  Hunger, Assistant Attorney General,  Guillermo Gil , United States Attorney, and  Robert S. Greenspan , Attorney, Appellate Staff Civil Division, Department of Justice, were on brief for appellee. ___________________ JULY 22, 1997 ___________________ COFFIN, Senior  Circuit  Judge. Appellants Kevin and Bobbi Rayzor seek to hold the United States responsible for the sexual abuse of their daughter by a babysitter whose name they obtained from a list allegedly recommended by the Navy. The Rayzors filed suit for damages under the Federal Tort Claims Act, 28 U.S.C. S 1346(b), asserting that the Navy was negligent in directing them to select a babysitter from a Red Cross generated list without first checking the qualifications of the individuals on the list. The district court granted summary judgment for the government on both that claim and a related First Amendment claim. We affirm. I. Background Appellant Kevin Rayzor, a petty officer in the Navy, was stationed with his wife and young daughter at a base in Ceiba, Puerto Rico. The Rayzors claim that the Navy instructed them to hire babysitters for sporadic child care needs only from a list provided by the American Red Cross at the base's Family Service Center. That list contained the names of teenagers who had completed the nine-hour Red Cross babysitting course offered at the  Two points warrant some elaboration. First, there is some confusion about whether the district court misunderstood the allegation to be that the Navy advised the Rayzors  not to hire from the Red Cross list. Unraveling the confusion is unnecessary because our assumption that the Navy did direct the Rayzors to use the list exclusively is most advantageous to the Rayzors, whose claim of negligence would be absurd, rather than just fruitless, if they had hired a sitter from the list despite the Navy's explicit directive not to do so. Second, the Rayzors' assertion that they were directed to hire from the Red Cross list is based only on their own statement and is not attributed to any particular individual or document. For purposes of summary judgment, we accept the allegation as true. base. The course covered the basics of first aid and outlined the duties of a babysitter. The Rayzors hired an individual from the list, and discovered the next day that she had physically and sexually abused their two- year-old daughter. They subsequently filed their complaint under the FTCA alleging that the Navy was negligent in "certif[ying]" the sitter, and in falsely representing that she was qualified to provide safe babysitting services. Appellants also alleged that the Navy violated their First Amendment rights by warning them "to keep silent" about the incident. The district court granted summary judgment for the government. It ruled that the FTCA was inapplicable because the Red Cross and its employees were not government employees whose conduct was actionable under the statute. It also held that an FTCA action was not viable because the Navy's alleged actions did not constitute negligence under local law. Although the government did not respond in its summary judgment motion to the First Amendment claim, the district court  sua  sponte dismissed the claim  The Navy sought to have the sitter prosecuted but the U.S. Attorney's office declined to prosecute because the sitter was a juvenile. The Navy operates two fulltime child care programs at the base, the Child Development Center/Preschool (CDC) and a Family Home Care Program (FHC), neither of which is at issue in this case. The Navy has issued detailed instructions for each of these programs, including background checks for FHC providers, who are private individuals who care for up to six children in a Navy housing unit. See App. at 24-41. for lack of supporting evidence. The Rayzors then filed this appeal. II. Federal Tort Claims Act Our review of a grant of summary judgment is de novo, and we evaluate the record in the light most favorable to the non-moving party. See Coyne v. Taber Partners I, 53 F.3d 454, 457 (1st Cir. 1995). Even from that vantage point, however, the Rayzors' negligence claim lacks luster. Their claim, in essence, is that the Navy should have probed the backgrounds of the babysitters on the Red Cross list before recommending them to base residents. Under Puerto Rico law, which is applicable in this FTCA suit,  see  Attallah v.  United States , 955 F.2d 776, 781 (1st Cir. 1992), such a claim is actionable only if a reasonable factfinder could find that the Navy had a duty to exercise due diligence to avoid foreseeable risks to the Rayzors, and that the Navy failed to fulfill that responsibility. See Coyne, 53 F.3d at 458-60;  Malave Felix v. Volvo Car Corp. , 946 F.2d 967, 971 (1st Cir. 1991). Even assuming, as the Rayzors argue at length, that the Navy acquired a duty to protect them as a result of its recommendation that they hire a babysitter from the Red Cross list -- a legal proposition about which we have doubts -- we think no reasonable factfinder could find either a failure to exercise due diligence or a foreseeable risk of harm.  The Rayzors do not appeal the court's holding that Red Cross workers are not federal employees, limiting their challenge on the FTCA claim to the court's ruling that they failed to make a viable showing of negligence. The Navy's only representation about the sitters on the Red Cross list was an implicit statement that they were preferable to other sitters because of their relationship with the international humanitarian agency, making them something of a known quantity. The Rayzors offer no evidence to support their contention that the Navy lacked due diligence in failing to investigate the individuals whose names appeared on the list. They cite to no incidents of child abuse involving Red Cross sitters generally, or concerning the specific individuals on the list at the base in Ceiba. Moreover, all of the individuals on the Red Cross list were teenagers, ranging in age from 11 to 17, and we cannot accept that a reasonable factfinder would have concluded that the Navy had an obligation to do background checks on minors who had undergone Red Cross training, in the absence of particularized concern. In short, a reasonable person would not have foreseen a need to investigate these Red Cross-affiliated sitters to prevent harmful criminal conduct. Although foreseeability typically is both a "factbound and case-specific" issue, see Coyne, 53 F.3d at 460 -- foreclosing summary judgment -- "the evidence must be such that the factfinder rationally can conclude that the risk complained of is among the universe of risks recognizable by reasonably prudent persons acting with due diligence under the same or similar circumstances." Id. (citing Pacheco v. Puerto  Rico  Water  Resources  Auth., 112 D.P.R. 367, 372 (1982)). As we have noted, however, the Rayzors have proffered no basis upon which a factfinder could conclude that it was foreseeable to the Navy that this, or any other teenage babysitter who had taken a Red Cross babysitting course, would engage in criminally abusive mistreatment of her charge.  Cf.,  e.g., Coyne, 53 F.3d at 461 (reversing summary judgment where defendants were on notice of the potential for violence); Elba v. Univ.  of P.R., 90 J.T.S. 13 (1990) (Official English Translation: No. RE-86- 214, slip op. at 21-23) (university's failure to provide adequate security in high-risk area gave rise to violent assault of female student);  Negron v.  Orozco Rivera , 113 P.R. Offic. Trans. 921, 927- 29 (1983) (reasonable person would have foreseen eruption of violence in police station, given prior confrontation between armed officer and decedent). See also Mas v. United  States, 984 F.2d 527, 530 (1st Cir. 1993) (showing of negligence under Puerto Rico law requires "a demonstration that the defendant has either actual or constructive knowledge of a dangerous condition"). We therefore conclude that the Rayzors failed to generate a sufficient factual dispute to survive the government's motion for summary judgment on the FTCA claim. Accordingly, we affirm the district court's dismissal of that claim. III. First Amendment Claim  We previously have observed that liability for a breach of duty under Puerto Rico law requires a causal relationship between the breach and the ensuing harm, meaning that "'the damage must have been foreseeable and  avoidable had the omitted action been timely taken,'" Coyne v. Taber  Partners  I, 53 F.3d 454, 459 (1st Cir. 1995) (quoting Elba v. Univ.  of  P.R., 90 J.T.S. 13 (1990) (Official English Translation: No. RE-86-214, slip op. at 12) (emphasis added)). The Rayzors offer no evidence that a background check would have revealed the unsuitability of the sitter. The Rayzors also alleged that the government violated their First Amendment rights by threatening that they should keep quiet about the abuse incident. The government's motion for summary judgment did not address this claim, but the court dismissed it  sua sponte because it could not find any proof in the record to verify the allegation. The court stated in its opinion: Mr. Rayzor has failed to identify or indicate who, if anyone, threatened him. In our opinion, a claim not supported by affirmative evidence does not present a genuine issue for trial. Unsupported allegations or denials are not enough to defeat a motion for summary judgment. Anderson v. Liberty  Lo[bby],  Inc. 477 U.S. 242, 252 (1986). The only apparent evidence on this claim contained in the appellate materials consists of two affidavits, one from each of the Rayzors. The content relevant to a First Amendment claim in Kevin Rayzor's affidavit is as follows: [W]e were harassed and threatened by Navy officers in an attempt to cover-up the incident. . . . I was told by an officer of the Navy that I better keep my wife's mouth shut, or I would have problems with my records. Bobbi Rayzor's affidavit merely repeats the allegation of harassment and threats, and alleges that action on her application to be licensed as a Child Care Provider was delayed because of the couple's complaints about the incident. We agree with the district court's judgment that these statements are inadequate to warrant a trial on the First Amendment claim. They fail to identify who made the threatening statement(s) or when they were made, the basis for Mrs. Rayzor's assertion that this incident affected her application to become a base Child Care Provider, or how Officer Rayzor's records could be affected by public disclosure of the assault. Appellants imply in their brief that summary judgment on this claim is premature because no discovery has been conducted. So far as we can tell, lack of discovery was not an issue below. The government moved for summary judgment on March 18, 1994, and the district court dismissed the case more than two years later on July 28, 1996. Appellants do not assert that they requested, but were denied, discovery. Instead, they maintain that their affidavits constituted "ample evidence" to survive summary judgment. As we already have explained, we disagree that their proffer is adequate. It is virtually axiomatic that "neither 'conclusory allegations,' . . . nor '[b]rash conjecture coupled with earnest hope that something concrete will materialize, is []sufficient to block summary judgment.'" J. Geils Band Employee Benefit Plan v. Smith  Barney  Shearson,  Inc., 76 F.3d 1245, 1251 (1st Cir. 1996) (citations omitted). This is all the Rayzors have offered.  We have some concern about the court's sua  sponte grant of summary judgment on the First Amendment claim in light of the government's failure to move for brevis disposition on that claim. This, however, was not an ambush. In its Reply to Plaintiffs' Opposition to Defendant's Motion for Summary Judgment, the government pointed to the lack of support for both the allegations of threats and Mrs. Rayzor's contention that the government stalled her license to become a Child Care Provider. The Reply was filed on June 27, 1994, more than two years before the court ruled. We therefore are satisfied that appellants had adequate notice of the government's challenge to the sufficiency of their "threat" allegations. See  Penobscot Indian Nation v.  Key Bank of Maine , 112 F.3d 538, 562 (1st Cir. 1997) (quoting Berkovitz v. Home  Box Office, Inc., 89 F.3d 24, 29 (1st Cir. 1996)) ("'targeted party'" must be given "'appropriate notice and a chance to present its evidence on the essential elements of the claim or defense'").  In these circumstances, to preclude summary judgment on the First Amendment claim based on the government's failure to seek it explicitly would be to waste judicial resources for the sake of pointless technicality. We decline to do so. For the foregoing reasons, the summary judgment of the district court is affirmed.