**Isabel CINTRON, Plaintiff,**

**v.**

**UNITED STATES of America, Defendant.**

**No. CLC 97–1505(PG).**

United States District Court,
D. Puerto Rico.

Jan. 13, 1998.

---

A.J. Amadeo–Murga, San Juan, PR, for Plaintiff.

Isabel Muñoz–Acosta, Asst. U.S. Atty., Hato Rey, PR, for Defendant.

## OPINION AND ORDER

PEREZ–GIMENEZ, District Judge.

Plaintiff Isabel Cintrón filed an action under the Federal Tort Claims Act, 28 U.S.C. § 2671, *et seq.*, for injuries suffered after a slip and fall at the employee Commissary at Fort Buchanan, San Juan, Puerto Rico. Jurisdiction is available pursuant to 28 U.S.C. § 1346(b).

The Federal Tort Claims Act authorizes negligence actions against the United States Government but requires that the applicable law come from the state where the negligence occurred. *See* 28 U.S.C. § 1346(b). The relevant Puerto Rico law is thus § 5141 of the Puerto Rico Civil Code, commonly known as Art. 1802:[1] "A person who by an act or omission causes damage to another through fault or negligence shall be obliged to repair the damage so done. Concurrent imprudence of the party aggrieved does not exempt liability but entails a reduction of the indemnity." P.R. Laws Ann. tit. 31, § 5141. Before the Court are plaintiff's motion, and defendant's opposition thereto, requesting that this Court certify to the Puerto Rico Supreme Court the question of whether a patron who falls in a slippery substance on the floor of a store does not have the burden of proof as to the length of time that such substance has been on the floor as decided in *Aponte v. Meléndez,* 87 P.R.R. 619 (1963), or, alternatively, whether said customer has to prove actual or constructive notice on the part of the owner of the store as an element of his cause of action as could be interpreted from *Cotto v. Consolidated Mutual Insurance Co.,* 116 P.R. Offic. Trans. 786 (1985).

 Puerto Rico law provides for certification procedures under Rule 53.1(e) of the Puerto Rico Rules of Civil Procedure, 32 L.P.R.A. Ap. III, and Rule 27 of the Puerto Rico Supreme Court Rules. When there is an absence of controlling state precedent, a federal court can therefore, in its discretion, certify questions of state law to the Puerto Rico Supreme Court. However, the First Circuit Court of Appeals stated in *Nieves v. University of Puerto Rico* that "before this discretionary decision is even considered ...

1. Throughout this opinion we will refer to Art. 1802 as § 5141.

[the federal court] must first undertake [its] own prediction of state law for [it] may conclude that 'the course [the] state court[] would take is reasonably clear.' " 7 F.3d 270, 274–75 (1st Cir.1993) (quoting *Porter v. Nutter*, 913 F.2d 37, 41 n. 4 (1st Cir.1990)). [2] *See also Rodriguez–Suris v. Montesinos*, 123 F.3d 10, 13 (1st Cir.1997) ("Where a jurisdiction's highest court has not spoken on a precise issue of law, we look to 'analogous state court decisions, persuasive adjudications by court of sister states, learned treatises, and public policy considerations identified in state decisional law' in order to make an 'informed prophecy' of how the state court would rule on the precise issue." (quoting *Blinzler v. Marriott Int'l, Inc.*, 81 F.3d 1148, 1151 (1st Cir.1996)); *DiLuglio v. New England Ins. Co.*, 959 F.2d 355 (1st Cir.1992) (noting that in the absence of controlling state precedent the federal court "must make an independent determination as to the rule of law that the state's highest court is likely to adopt"); *Amherst Sportswear Co., Inc. v. McManus*, 876 F.2d 1045, 1048 (1st Cir.1989) ("In the absence of controlling state law, a federal court should choose the rule that it believes the state's highest court is likely to adopt in the future.").)

■ Plaintiff argues in its motion that the Supreme Court of Puerto Rico has not yet decided who has the burden of proof in a slip and fall case. The Supreme Court of Puerto Rico held in *Aponte v. Meléndez*, that "in a business open to the public, the main duty of maintaining the place safe corresponds to the owner of the business or to the property owner" and the plaintiff is not required to establish that the owner had actual or constructive notice of the dangerous condition. 87 P.R.R. at 622. In *Cotto v. Consolidated Mut. Ins. Co.*, however, it espoused a different view. In this later case, it held that "the owner of a business 'is not an insurer of the safety of the business visitors, and his duty extends only to the exercise of reasonable care for their protection' and that the visitor must prove that the owner of the business has not taken 'proper care ... to make the premises safe for him.' " 116 P.R. Offic. Trans. at 793. The court ultimately held that liability only extends if and when the owners have actual or constructive notice of the dangerous condition.

The unclarity created by these two differing cases, and their progeny, is discussed extensively in the First Circuit Court of Appeals case *Mas v. United States*, 984 F.2d 527 (1st Cir.1993). In that case, the Court of Appeals was faced with the same dilemma we have before us and found that the *Cotto* line of cases was more consistent with the language of § 5141 because it "gave effect to all of the language of the statute, including the language concerning fault and negligence," while *Aponte* and its progeny "virtually deleted those words from the statute." *Id.* at 530. The Court of Appeals also relied on the fact that "*Cotto*, as the more recent case, provides the most authoritative description of the current state of the law. To the extent that its language is inconsistent with *Aponte* and its progeny, *Cotto* represents an evolved understanding of § 5141." *Id.* The Court of Appeals ultimately held that disregarding

**2.** Justice Ginsburg writing for the Court in *Arizonans for Official English v. Arizona*, 520 U.S. 43, 117 S.Ct. 1055, 137 L.Ed.2d 170 (1997), discussed the importance of taking advantage of certification procedures when available. After stating that "[f]ederal courts lack competence to rule definitively on the meaning of state legislation," *id.* 117 S.Ct. at 1059, she observed that " '[s]peculation by a federal court about the meaning of a state statute in the absence of prior state court adjudication is particularly gratuitous when ... the state courts stand willing to address questions of state law on certification from a federal court,' " *id.* at 1074. Finally, she concluded that when there are novel and unsettled questions of law certification requests merit careful consideration. *Id.* 1074–75. She also explained that while certification only requires that there be novel unsettled questions of state law, the particular circumstances of the case, which dealt with interpretation of a new amendment to the Arizona Constitution and its possible invalidation, made certification especially appropriate. *Id.* The Court's strong endorsement of certification however, does not change the principles outlined in *Lehman Bros. v. Schein*, 416 U.S. 386, 94 S.Ct. 1741 (1974). Certification is meant to "save time, energy, and resources and help[] build a cooperative judicial federalism," and the decision to certify or not still rests within the sound discretion of the federal court. *See id.* 416 U.S. at 390–91 ("We do not suggest that where there is doubt as to local law and where the certification procedure is available, resort to it is obligatory.").

*Cotto* if favor of *Aponte* could result in application of potentially outdated law. *See id.* The Court agrees with this reasoning. Even though there is disparity between the *Aponte* and *Cotto* lines of cases, the Court finds that the latter more accurately reflects the current state of Puerto Rican law. Moreover, since the course the Supreme Court of Puerto Rico would take is made reasonably clear by *Cotto*, we hold that certification is not warranted.[3] *See Nieves, supra*, at 274–75.

**WHEREFORE**, the Court **DENIES** plaintiff's motion requesting certification.

**IT IS SO ORDERED.**

---

**3.** The Court is also concerned with the possibility that the Supreme Court of Puerto Rico might refuse to answer the question if it were to certify it. In *Pan American Comp. Corp. v. Data Gen. Corp.* the Supreme Court of Puerto Rico explained that the danger inherent in certification is that it "may generate abstract answers" and "lead the court to issue advisory opinions." 112 P.R. Offic. Trans. 983, 990 (1982). It is because of this that it will only answer questions which are determinant to the cause of action. *See* P.R. R. Civ. P. 53(f); P.R. Sup.Ct. R. 27. The Supreme Court of Puerto Rico explained that

[t]he federal court cannot determine a priori if the state law question is determinative of the cause of action if it does not know what will be the state court's decision on the same. Whether or not a question is determinative shall depend on said court's final interpretation. For this requirement to be complied with, it

suffices, then, that one of the possible answers of [the Supreme Court of Puerto Rico] to the certified question may determine the outcome of the case.

*Pan American, supra*, at 994. For example if after certifying a question to the Supreme Court of Puerto Rico, one of the possible answers results in dismissal, while the other requires reversion to the federal court for further proceedings, one of the answers is determinant and the question will probably be answered. *See id.* at 995. In the instant case, however, neither answer would be determinant. Either way the case would have to be reverted to this Court for further proceedings. The Supreme Court of Puerto Rico might thus refuse to answer. Certification is meant to save time, energy and resources, but in this case it might be an exercise in futility. *See Lehman Bros.*, 416 U.S. at 391.