# United States Court of Appeals
## For the First Circuit

No. 03-1120

VÍCTOR VEGA-ENCARNACIÓN,

Plaintiff, Appellant,

v.

EUSTAQUIO BABILONIA, Deputy Chief, U.S. Probation Office;
LUIS O. ENCARNACIÓN-CANALES, U.S. Probation Officer;
LUIS O. PÉREZ, Deputy U.S. Marshal; PEDRO ZAYAS,
Deputy U.S. Marshal; JESÚS R. GONZÁLEZ, DEA Special Agent;
RAFAEL A. SANTIAGO, DEA Special Agent; EDWIN O. VÁZQUEZ, AUSA;
RAFAEL ESCOBAR, Deputy U.S. Marshal; ALL IN THEIR PERSONAL AND
INDIVIDUAL CAPACITIES,

Defendants, Appellees.

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

[Hon. Raymond L. Acosta, Senior U. S. District Judge]

Before

Boudin, Chief Judge,
Torruella and Selya, Circuit Judges.

José R. Franco and José R. Franco Law Office on brief for
appellant.
Miguel A. Fernández, Assistant U.S. Attorney, Chief, Civil
Division, Fidel A. Sevillano-Del Río, Assistant U.S. Attorney, and
H.S. García, United States Attorney, on brief for appellees.

September 12, 2003

**BOUDIN**, **Chief Judge**.   Victor Vega-Encarnación appeals from a district court order granting defendants' motion to dismiss his civil rights complaint against eight federal officials.

According to Vega's complaint, on February 2, 2001, Probation Officers Babilonia and Encarnación-Canales telephoned Vega and ordered him to report to the Probation Office in Hato Rey, Puerto Rico.  At the time, Vega was serving a five-year term of supervised release.  When Vega arrived, he was arrested by Deputy Marshals Pérez and Zayas for violating unspecified terms of his supervised release.  Pérez and Zayas seized from Vega a number of personal items, including the keys to a Nissan Pathfinder, which Vega had left parked across the street from a 7-11 Store on Chardon Avenue near the Probation Office.

Vega says in his complaint that he was allowed to call his brother to arrange for the retrieval of his personal items and his car.  According to Vega, he called his brother shortly after 3 p.m. in the presence of Encarnación, Babilonia, Pérez, and Zayas. He told his brother where the car was parked and instructed him to come to the Probation Office, recover the keys from Encarnación and Babilonia, and drive it back to Vega's house.  The defendants deny that Vega successfully contacted his brother or anyone else to arrange for the retrieval of the car.

Vega says in his complaint that his brother arrived at the Probation Office at approximately 4:50 p.m. accompanied by a

-2-

paralegal who worked for Vega's attorney.  According to Vega, his brother saw that the car was not where Vega had reported it to be, and he went into the Probation Office and asked to speak with the probation officers, but was told they were unavailable.  Vega says that a phone call by the paralegal to the Probation Office also proved futile.  Defendants apparently deny that Vega's brother came to the Probation Office that day.

In all events, after arresting Vega, the marshals took Vega to be booked and processed.  Then, Deputy U.S. Marshals Escobar and Pérez used the key seized from Vega to drive Vega's car to a secure lot.  There they conducted an inventory search of the vehicle.  Vega asserts that during the course of this search, Escobar and Pérez broke open Vega's locked briefcase and discovered within it $7,000 in loose cash and 32 pill-like tablets.  The marshals reported their findings to AUSA Vázquez, who in turn relayed the information to DEA agents González and Santiago.  González and Santiago then had a trained narcotics dog sniff the tablets, and the dog "alerted positive."

Defendants admit that they seized the car and that they conducted an inventory search of it.  They claim that the search was conducted in accordance with written U.S. Marshals Service guidelines.  Defendants say that they found the money and the tablets in the car; they do not say whether they broke open Vega's briefcase during the search.

DEA Agents González and Santiago then went before a magistrate judge, seeking a search warrant for Vega's car. Vega alleges that González and Santiago deliberately omitted from their warrant application the fact that the car had already been subject to an inventory search, which had turned up incriminating evidence. Defendants admit applying for the search warrant, but do not say whether the inventory search results were omitted from the application. The magistrate judge issued the warrant, and González and Santiago seized the cash and the tablets, which turned out to be the illegal drug known as Ecstasy.

On February 27, 2002, Vega (now in jail) filed a pro se civil action against Probation Officers Babilonia and Encarnación, Deputy U.S. Marshals Pérez and Zayas, and DEA agents González and Santiago in the federal district court in Puerto Rico. The complaint sought compensatory and punitive damages for violations of Vega's Fourth Amendment rights. See Bivens v. Six Unknown Named Agents of Fed. Bureau of Narcotics, 403 U.S. 388 (1971). Vega later amended his complaint to add as defendants AUSA Vázquez and Deputy U.S. Marshal Escobar. The defendants answered, and thereafter moved to dismiss Vega's amended complaint for, inter alia, failure to state a claim and lack of personal jurisdiction over AUSA Vázquez due to insufficient service of process.

On October 28, 2002, the district court, believing defendants' motion to be unopposed, granted it and entered judgment

-4-

for the defendants.  Vega's motion to extend the filing deadline for his response to defendants' motion arrived the same day as the entry of judgment, but the district court ruled that it was moot. After filing two post-judgment motions, which were both denied, Vega filed this appeal.

In reviewing the district court's brief, one-page order, we are uncertain of the basis for dismissal. In substance, it says only that "[a]bsent opposition, and it appearing that dismissal of the complaint is warranted due to plaintiff's failure to state a claim upon which relief can be granted, ... Defendants' Motion to Dismiss ... is hereby GRANTED."

Possibly dismissal was granted because Vega failed to file timely opposition.  In the district court in Puerto Rico, failure to respond to a motion "renders a party susceptible to involuntary dismissal, pursuant to [Federal Rule of Civil Procedure] 41(b), for failure to prosecute." Negron-Gaztambide v. Hernandez-Torres, 35 F.3d 25, 26 n.4 (1st Cir. 1994) (citing Local Rule 313.3 (D.P.R.)).  In this case, our own review of the record suggests that, even under the prisoner mail-box rule, Morales-Rivera v. United States, 184 F.3d 109, 110-11 (1st Cir. 1999), Vega's motion to enlarge the time for his response was late by approximately one week. See Fed. R. Civ. P. 6(a); Local Rule 311.5 (D.P.R.).

Nevertheless, Vega's tardiness does not <u>automatically</u> result in dismissal, <u>Nepsk, Inc.</u> v. <u>Town of Houlton</u>, 283 F.3d 1, 7 (1st Cir. 2002), and the district court does not mention failure to prosecute or Local Rules 311.5 and 313.3. Given that Vega was a prisoner proceeding pro se at the time the district court entered its decision, we are doubtful that dismissal was imposed as punishment for a missed deadline, <u>cf.</u> <u>Bachier-Ortiz</u> v. <u>Colon-Mendoza</u>, 331 F.3d 193, 195 (1st Cir. 2003) (generally reserving the sanction of dismissal for lack of prosecution to situations where plaintiff's misconduct is "serious, repeated, contumacious, extreme, or otherwise inexcusable").

Another possible reading of the district court's order is that, "[a]bsent opposition," the district court accepted the description of events in defendants' motion to dismiss as accurate. If the defendants' version of events is accepted, then their decision to impound the car almost certainly falls within the community caretaking exception to the warrant requirement, with the result that Vega's complaint probably does fail to state a claim upon which relief can be granted. <u>See</u> <u>Colorado</u> v. <u>Bertine</u>, 479 U.S. 367, 369, 371, 375-76 (1987); <u>United States</u> v. <u>Ramos-Morales</u>, 981 F.2d 625, 626-27 (1st Cir. 1992).

The problem is that when deciding a motion to dismiss on the merits, a district court is obliged to accept the factual allegations contained in the complaint as true. <u>Martin</u> v. <u>Applied</u>

Cellular Tech., 284 F.3d 1, 5-6 (1st Cir. 2002). If the merits are at issue, the mere fact that a motion to dismiss is unopposed does not relieve the district court of the obligation to examine the complaint itself to see whether it is formally sufficient to state a claim. See Pinto v. Universidad de Puerto Rico, 895 F.2d 18, 19 & n.1 (1st Cir. 1990); see also McCall v. Pataki, 232 F.3d 321, 322-23 (2d Cir. 2000). Thus, the defendants' version of events, as yet untested, is not itself a basis for finding that Vega "fail[ed] to state a claim . . . ."

There may be some other basis for concluding that the complaint failed to state a claim. For example, under Bertine, law enforcement officials are not required to give arrestees the opportunity to make arrangements for their vehicles when deciding whether impoundment is appropriate. 479 U.S. at 373-74. But law enforcement officials are required to have a non-investigatory reason for seizing an arrestee's car in the first place. Id. at 375-76. Case law supports the view that where a driver is arrested and there is no one immediately on hand to take possession, the officials have a legitimate non-investigatory reason for impounding the car. Cf. Ramos-Morales, 981 F.2d at 626-27 (to protect it from vandalism).

Whether this reasoning works where, as here, Vega was allowed to call his brother to pick up the car, is an issue that might be debated. Of course, on the defendants' version of events

-7-

no such successful call was made; but we have to suppose for present purposes that Vega's version is true. And, as the legal question is somewhat unusual and certainly has not been explicitly decided by the district court or briefed in this court, it hardly makes sense for us to address it in the first instance. Indeed, the district court's dismissal for failure to state a claim may rest upon some other basis.

Under the circumstances, we think that the appropriate solution is to vacate the district court's order and to remand for further proceedings. The district court is free to reinstate its order, so long as it provides a basis for concluding that no claim has been stated, and that order will in turn be subject to review on appeal if Vega chooses to file one. Or, on further consideration, the district court is free to deny the motion to dismiss and conduct further appropriate proceedings.

A couple of other points deserve mention. First, Vega's Bivens claim had two other aspects: one that the inventory search of the briefcase was unlawful even if the car was properly impounded and the other that the warrant was defective because it was procured without adequate disclosure. The first of these two variations is uncertain--the marshals apparently rely on guidelines, cf. Florida v. Wells, 495 U.S. 1, 4-5 (1990), whose contents are not part of the record; and the second is quite doubtful since the other evidence in the application was arguably

sufficient.  See Franks v. Delaware, 438 U.S. 154, 156 (1978).  But these are matters that should be sorted out on remand and not made the subject of piece-meal review.

In addition, on appeal, the defendants say that the statute of limitations on Vega's claim had run and, although not asserted below as a ground for the dismissal, the issue is jurisdictional.  It is not: the statute of limitations as to a Bivens action against individual officers is simply an affirmative defense and does not affect a court's subject matter jurisdiction.  See Roberts v. College of the Desert, 870 F.2d 1411, 1414 (9th Cir. 1989); Paetz v. United States, 795 F.2d 1533, 1536 (11th Cir. 1986).  The limitations defense--although adequately preserved by the answer to the complaint--is a matter complicated by prior attempts to file the complaint and should be addressed in the first instance in the district court.

We remand as well the dismissal as to defendant Vázquez for lack of personal jurisdiction due to insufficient service of process.  So far as we can tell from the record, the defendants' answer filed prior to the motion to dismiss did not plead lack of personal jurisdiction or insufficiency of service of process.  If this is the case, the defense is waived.  Fed. R. Civ. P. 12(h)(1); Glater v. Eli Lilly & Co., 712 F.2d 735, 738 (1st Cir. 1983).  If there is more to say about this matter, Vázquez is free to renew

his motion on remand; but as presently advised, we are not prepared separately to affirm on this issue.

The judgment of dismissal is <u>vacated</u> and the matter is <u>remanded</u> for further proceedings consistent with this decision.

<u>It is so ordered</u>.